IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KEVIN SANFORD, individually and on
behalf of all others similarly situated                                                              PLAINTIFF

v.                              Case No. 3:18-cv-00158-KGB

NUCOR-YAMATO STEEL COMPANY and
NUCOR CORPORATION                                                                                DEFENDANTS

## ORDER

Before the Court is the parties' renewed joint motion to dismiss with prejudice and for approval of settlement agreement (Dkt. No. 34). The parties previously filed under seal their first joint motion for approval of stipulated collective action settlement and dismissal of case with prejudice (Dkt. No. 22). After review, the Court denied in an Order entered under seal the parties' request for approval of the settlement agreement (Dkt. No. 28). In denying the parties' first request for approval of the settlement agreement, the Court identified concerns regarding both the proposed method for notice and consent and the dollar amounts and method of allocations of the dollar amounts (*Id.*, at 13). The parties now request that the Court enter an order approving the parties' proposed Joint Stipulation of Settlement Agreement ("Settlement Agreement") and dismissing with prejudice this lawsuit in its entirety after final payment has been made (Dkt. No. 34, at 8). For the following reasons, the Court grants in part and denies in part the parties' renewed joint motion to dismiss with prejudice and for approval of the settlement agreement (Dkt. No. 34).

**I.      Background**

Plaintiff Kevin Sanford, individually and on behalf of others similarly situated, filed this action against defendant Nucor-Yamato Steel Company ("Nucor-Yamato") and Nucor Corporation (collectively, "defendants"), alleging violations of the overtime requirements of the

Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201 to 11-4-222 (Dkt. No. 1). Mr. Sanford states that, as a Production Worker at defendants' manufacturing facilities in Mississippi County, Arkansas, he was "a classic manual laborer[], working with machinery and equipment to produce Defendant's products in a factory setting." (*Id.,* ¶¶ 41, 44). Mr. Sanford alleges that he and other Production Workers were classified as hourly employees and regularly worked in excess of 40 hours per week throughout their tenure with defendants (*Id.*, ¶¶ 34, 35). Mr. Sanford further maintains that he and other Production Workers were also paid non-discretionary cash awards and bonuses on a regular basis when certain objective and measurable criteria were met (*Id.*, ¶ 36). Mr. Sanford asserts that defendants paid him and other Production Workers one-and-one-half times their base hourly rate for each hour they worked over 40 hours a week (*Id.*, ¶ 37). Mr. Sanford alleges that defendants did not include the bonuses and cash awards paid to Mr. Sanford and other Production Workers in their regular rates when calculating their overtime pay, in violation of the FLSA and AMWA (*Id.*, ¶ 38). Mr. Sanford further claims that defendants' compensation practices were the same for all hourly workers at all of defendants' facilities in the United States, including the Mississippi County facility where Mr. Sanford worked (*Id.*, ¶¶ 41-42).

II.     **Parties' Renewed Motion**

With the parties' renewed motion, the parties request that the Court reconsider, in the light of their renewed motion, the parties' originally proposed Settlement Agreement (Dkt. No. 23-1).

A.      **Parties' Stipulated Proposal**

The parties state that their proposed Settlement Agreement purports to resolve claims on behalf of those who opt-in to a collective action class to be certified pursuant to the parties' Joint Stipulation for Conditional Certification for Settlement Purposes Only, Distribution of Notice and

for Disclosure of Contact Information ("Joint Stipulation") (Dkt. No. 33). The parties represent that the Settlement Agreement is fair, reasonable, and adequate (Dkt. No. 34, ¶ 6). The parties request that the Court review and approve the proposed Notice of Collective Action Settlement and Consent to Join Collective Action for Settlement Purposes Only ("Notice" and "Consent" forms) (*Id.*, ¶ 8).

The parties propose the following collective class:

> [A]ll individuals who held an hourly, non-exempt position with Defendant in which they received an auditor bonus and worked more than 40 hours per week during at least one workweek between August 23, 2015 and December 31, 2017.

(Dkt. No. 33, ¶ 7).

The parties state that potential collective class members who sign and timely submit their consent form will be bound by the limited release in the Settlement Agreement, which is explained in the proposed Notice (Dkt. No. 34, ¶ 19). The parties also state that potential collective class members who do not send in a timely claim form will not be a part of the settlement or be bound by any release (*Id.*).

The parties propose to the Court notices of the settlement and reminder notices to be sent to individuals identified as members of the proposed collective class eligible to participate in the settlement, if they opt-in (Dkt. No. 33-1, 33-2). The parties agree upon and propose to the Court a timeline for issuing notice and receiving and filing opt-in documents from members of the proposed collective (Dkt. No. 33, ¶¶ 11-15). Specifically, plaintiffs agree to file the consent opt-in documents with the Court, "with identifying information redacted." (*Id.*, ¶ 15).

As part of their renewed motion, the parties included additional information regarding the dollar amounts and method of allocations of the dollar amounts in the proposed Settlement

Agreement (Dkt. No. 34, ¶¶ 15-18). Further, the parties disclose to the Court information related to the amount of attorneys' fees contemplated by the parties (*Id.*, ¶ 20).

For these reasons, Mr. Sanford and defendants renew their original request that the Court certify an opt-in collective class under the FLSA for settlement purposes only (Dkt. Nos. 23, at 1, 34). The parties assert that they have agreed to a settlement collective class for settlement purposes only, pursuant to 29 U.S.C. § 216(b).

The parties are seeking certification of an opt-in collective class for settlement purposes only, pursuant to the FLSA. 29 U.S.C. § 216(b). When parties request collective class certification under the FLSA for settlement purposes only, without previously moving for collective class certification, other district courts have ruled on the request based on the standard for conditional class certification. *See*, *e.g.*, *Ketty v. Parkinson's Specialty Care, LLC*, No. 14CV04849MJDJSM, 2016 WL 3034158 (D. Minn. May 27, 2016) (granting an unopposed motion for final approval of collective action settlement after previously granting a motion for preliminary approval of the class action settlement and conditionally certifying the settlement class). Because the Court construes the parties' joint motion as a request for conditional certification of the collective class, the Court will analyze the parties' request under the requirements of conditional class certification pursuant to the FLSA.

> Under the FLSA:
>
> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases.  At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential collective class members.  The key issue is whether the members of the proposed class are similarly situated.  If the Court allows notification, then a representative class is conditionally certified, and notice is typically sent to the putative opt-in plaintiffs.  At the second stage, the Court determines whether to decertify the class once discovery is largely complete.  *See Smith v. Frac Tech Servs., Ltd.*, No. 4:09CV000679JLH, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009).

### 1.      Proposed Members Of The Collective Class

"To establish that conditional certification is appropriate, the plaintiff[] must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)).  Mr. Sanford's burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that he and the putative collective class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion.  *Resendiz–Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)).  While "[t]his is a lenient standard, . . . 'more than mere allegations' are required." *Tegtmeier*, 208 F. Supp. 3d at 1019 (quoting *Robinson*, 254 F.R.D. at 99).

During the first stage of the two-step process, "the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007)

(quoting *Dege v. Hutchinson Tech., Inc.*, No. CIV 06-3754 DWF/RLE, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007)).  Some district courts have found that "[a] colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim."  *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 278–79 (D. Minn. 1992).  Other district courts, however, have held that a plaintiff can meet its burden for conditional class certification "based solely on the allegations in the complaint."  *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (citing Belcher v. Shoney's, Inc., 927 F. Supp. 249, 251 (M.D. Tenn. 1996)).  This Court is not aware of any district court in the Eighth Circuit that has granted a plaintiff's request for conditional class certification based solely on an unverified complaint.  *See*, *e.g.*, *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-CV-1719 SRN/SER, 2014 WL 4449670, at *11 (D. Minn. Apr. 10, 2014) (conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs based on declarations and other evidence submitted by plaintiffs, while noting that "some courts require factual support for plaintiff's allegations at the initial conditional certification stage, while others permit a plaintiff to rely only on the complaint (citing *White*, 236 F.R.D. at 368)), *report and recommendation adopted in part*, 49 F. Supp. 3d 564 (D. Minn. 2014).

With respect to this proposed collective class, in the complaint Mr. Sanford alleges that he is bringing this FLSA action "on behalf of all hourly Production Workers employed by Defendant at any time within the applicable statute of limitations period, who were classified by Defendant as non-exempt from the overtime requirements of the FLSA . . . ."  (Dkt. No. 1, ¶ 47).  Mr. Sanford asserts that this action applies to "all other Production Workers employed by Defendant at any time within a three-year period preceding the filing of this Complaint."  (*Id.*, ¶ 1).  Mr. Sanford further asserts that Nucor-Yamato "operates the largest structural steel mill in the western

hemisphere in Mississippi County, Arkansas," which is where Mr. Sanford was employed during the relevant time period (*Id.*, ¶ 18).

With respect to whether the proposed collective class is similarly situated, Mr. Sanford asserts in the complaint that:

> The members of the proposed FLSA Collective are similarly situated in that they share these traits:
>
> A.  They were classified by Defendant as non-exempt from the overtime requirements of the FLSA;
>
> B.  They were paid hourly rates;
>
> C.  They recorded their time in the same manner; and
>
> D.  They were subject to Defendant's common policy of improperly calculating overtime pay for hours worked over forty (40) per work week.

(*Id.*, ¶ 49). Mr. Sanford further asserts in his unverified complaint that he is "unable to state the exact number of the potential members of the FLSA Collective but believe[s] that the group exceeds 500 persons." (*Id.*, ¶ 50).

Mr. Sanford alleges that he was a Production Worker for Nucor during the three-year time period, like all other potential collective class members (*Id.*, ¶ 13). Mr. Sanford's complaint does not specify the geographic location of the potential collective class members, but he does mention in the complaint only the Nucor-Yamato manufacturing facilities located in Mississippi County, Arkansas. Mr. Sanford further alleges that he, along with the potential collective class members, suffered the alleged harms during the three years preceding the filing of the complaint. Mr. Sanford also maintains that the compensation policy that is at issue in this case was created by Nucor-Yamato and applied to all potential collective class members, including himself, during the relevant time period. Finally, Mr. Sanford has alleged that, pursuant to the FLSA, all potential

collective class members were undercompensated because of Nucor-Yamato's common compensation policy. In their joint motion, the parties request the certification of an opt-in collective class for settlement purposes only.

According to the Settlement Agreement, "[t]he parties hereto have investigated the legal and factual issues related to the claims and defenses in this Lawsuit." (Dkt. No. 23, Ex. 1, at 1). The parties jointly represent to the Court that they engaged in informal discovery and settlement negotiations and identified members of the collective class through this (Dkt. No. 33, ¶¶ 6, 9). Counsel identified those who received auditor bonuses during the relevant period, were employed by defendants at the Mississippi County facility, the amount of the auditor bonuses paid, and the effect of the auditor bonus on each employee's regular rate (*Id.*, ¶ 9).

The Court approves of the parties' proposed definition of the collective class.

### 2. Proposed Notice

The parties agree upon and propose to the Court notices, a timeline for issuing notice, and a timeline for receiving and filing opt-in documents from members of the proposed collective class (Dkt. Nos. 33, ¶¶ 11-15, 33-1, 33-2). Potential collective class members who sign and timely submit their opt-in forms will be bound by the limited release in the proposed Settlement Agreement, which is explained in the parties' proposed notice (Dkt. No. 34, ¶ 19). Potential collective class members who do not participate by returning their opt-in forms will not be a part of the settlement or bound by any release (*Id.*).

Specifically, plaintiffs agree to file the consent opt-in documents with the Court, "with identifying information redacted." (Dkt. No. 33, ¶ 15). To the extent plaintiffs represent that they will file consent opt-in documents that permit the Court to know the names of those members opting into the settlement but will redact consistent with this Court's requirements on redacting

other personal identifying information, the Court approves. For the reasons explained in the Court's under seal Order and based on the entire record before the Court, the Court does not approve of a settlement that permits the names of individuals opting into the settlement collective to remain sealed or confidential. The Court notes that the parties have asked the Court to approve its unmodified Settlement Agreement (Dkt. No. 23-1). To the extent the Settlement Agreement conflicts with this Order, the Court denies approval of the Settlement Agreement.

Consistent with the terms of this Order, the Court approves of the parties' proposed notices, timeline for issuing notice, and timeline and method for receiving and filing opt-in documents from members of the proposed collective class.

### 3. Approval Of Settlement Agreement As To Proposed Amounts

The parties also request the Court's approval of their Settlement Agreement as to proposed amounts. Settlement agreements resolving FLSA claims are typically subject to court approval. *See Dillworth v. Case Farms Processing, Inc.*, Case No. 5:08-CV-1694, 2010 WL 776933, at *2 (N.D. Ohio Mar. 8, 2010) (citing 29 U.S.C. § 216(b)). Before approving a settlement, the Court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute. *See id.* at *5.

Mr. Sanford asserts that, for FLSA settlement agreements, a district court should approve a fair and reasonable settlement if it was reached at an arm's length resolution of contested litigation to resolve a *bona fide* dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–54 (11th Cir. 1982).

The parties represent to the Court that they agree a *bona fide* dispute exists (Dkt. No. 34, ¶ 13). Mr. Sanford contends that he, along with members of the collective class, were paid a yearly non-discretionary auditor bonus by defendants which was not calculated into their regular rate when calculating their overtime pay, resulting in a failure to pay a lawful overtime premium for

9

all hours worked in excess of 40 hours per week (*Id.*). Defendants deny any liability or wrongdoing of any kind and deny defendants ever failed to compensate Mr. Sanford or members of the collective class (*Id.*).

With respect to the calculation of damages, the parties represent that damages in this case were calculated by dividing the annual auditor bonus paid to Mr. Sanford and the collective class members by 52 weeks (*Id.*, ¶ 15). The amount of the bonus received each week was then divided by the total number of hours worked in that week, inclusive of overtime hours, to calculate the increase in the regular rate (*Id.*). According to the parties, the increase in the regular rate of pay was then multiplied by 0.5 to determine the increase in the overtime rate of pay (*Id.*). The increase in the overtime rate of pay was then multiplied by the total number of overtime hours worked in that week (*Id.*). That amount then represented the damages in that week (*Id.*).

The total damages for Mr. Sanford and the collective class members, including an equal amount of liquidated damages, was calculated to be $18,125.48 (*Id.*). The parties agreed to a total maximum settlement amount for plaintiff and the potential collective class of $18,125.00 (*Id.*, ¶ 16). The parties further agreed to a service award to Mr. Sanford in the amount of $1,500.00, which was to be paid out of the maximum settlement amount, leaving the parties with $16,125.00 to compensate Mr. Sanford and the collective class for their damages (*Id.*). After Mr. Sanford and the collective class were allocated their full actual damages totaling $9,062.74, Mr. Sanford and the collective class members took a *pro rata* share of the remaining maximum settlement amount ($7,562.26) as liquidated damages (*Id.*, ¶ 17). This settlement allocation is reflected in the "Distribution Table" previously submitted to the Court under seal (Dkt. No. 23-2). One half of the total amount allocated to each potential collective class member is subject to W-2 tax reporting,

and the second half is subject to 1099 reporting; this is reflected in the allocation spreadsheet (Dkt. No. 34, ¶ 18).

According to the parties, they negotiated an award of a reasonable attorney's fee and costs separately and above the settlement amount to be paid to Mr. Sanford and potential collective class members (*Id.*, ¶ 20). According to the proposed Settlement Agreement, the "Maximum Settlement Amount" is the total sum of $40,125.00 (Dkt. No. 23, Ex. 1, at 2). Nucor-Yamoto agrees to pay that amount *and* to be responsible for paying all employer-paid withholding and payroll taxes and similar expense as required by law with respect to settlement payments to plaintiff Mr. Sanford and opt-in plaintiffs (*Id.*). From the $40,125.00, Nucor-Yamoto will pay attorneys' fees of $22,000.00 (*Id.*, at 3). According to the parties, under the settlement allocation proposed, Mr. Sanford and members of the collective class who join in the settlement "are therefore receiving 100% of their actual damages, and well over 50% of their liquidated damages." (Dkt. No. 34, ¶ 17). For these reasons, the parties assert that, "[b]ecause the fee was negotiated separately and was over and above the maximum recovery for Plaintiff and the potential class, no conflict exists between Plaintiff and counsel. . . ." (*Id.*, ¶ 20).

The Court approves of the parties' proposed amounts to be paid to Mr. Sanford and members of the collective class who opt-in to this settlement. The Court also approves of the parties' proposed attorneys' fees.

**III.    Request For Dismissal With Prejudice**

At this time, the Court denies without prejudice the parties' request that the Court dismiss with prejudice the claims in this action. To clarify, the parties request that "[u]pon notice to the court of the final payment by counsel, the case should be dismissed with prejudice." (Dkt. No. 34,

¶ 9). The parties may request that the Court dismiss the case with prejudice at that time; the Court declines to dismiss the action now.

### IV. Conclusion

For these reasons, the Court grants in part and denies in part the parties' renewed joint motion to dismiss with prejudice and for approval of the settlement agreement (Dkt. No. 34).

It is so ordered this 11th day of March, 2021.

_____
Kristine G. Baker
United States District Judge